**Lillian MOYER, etc., Plaintiff,**

v.

**KLOSTERS REDERI, etc., Defendants.**

No. 84–1944–Civ.

United States District Court,
S.D. Florida.

Sept. 26, 1986.

Robert Peltz, Rossman, Baumberger & Peltz, P.A., Miami, Fla., for plaintiff.

Edward A. Moss, Anderson Moss Russo & Gievers, P.A., Miami, Fla., for defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF THE APPLICABILITY OF THE DEATH ON THE HIGH SEAS ACT (DOHSA 46 U.S.C. § 762).

MARCUS, District Judge.

THIS CAUSE comes before the Court upon Defendants' Motion for Partial Summary Judgment on the Issue of the Applicability of the Death on the High Seas Act ("DOHSA") 46 U.S.C. § 761 *et seq.*, filed on May 19, 1986, Plaintiff's responsive pleadings of June 6, 1986 and June 25, 1986, and Defendants' Reply of June 20, 1986, and most recently its reply of August 5, 1986. For the reasons stated at length in this opinion, we conclude that Plaintiff is indeed entitled to partial summary judgment, that DOHSA applies to this cause of action and preempts the application of the Florida Wrongful Death Statute, and thus that any

recovery to which Plaintiff might be entitled would be limited to pecuniary damages.

## I.

At the outset we note that Defendants have previously raised the issue of the applicability of the Death on the High Seas Act to this cause of action, in two Motions to Strike filed with this Court pursuant to Rule 12(f), Fed.R.Civ.P. Defendants' first Motion to Strike, filed on September 6, 1984, asked the Court to strike from Plaintiff's original Complaint all non-pecuniary damage allegations as barred by DOHSA, 46 U.S.C. § 762, which Defendant asserted to be the controlling law in this action. On October 5, 1984, the Court, in an opinion by the Honorable Alcee Hastings, to whom this cause was originally assigned, issued an Order denying the Motion to Strike and declining to rule upon the applicability of DOHSA to the action.

On September 12, 1985, Defendants submitted a second Motion to Strike, focusing upon Plaintiff's Amended Complaint, which had been filed with the Court on August 23, 1985, subsequent to the Court's denial of Defendants' first Motion to Strike. In this second Motion, Defendants again asserted that the location and circumstances surrounding Plaintiff's decedent's death invoked DOHSA, and that DOHSA's applicability preempted the recovery of damages under other statutes. Specifically, Defendants asked the Court to strike Count IV of the Amended Complaint because it alleged damages "not recoverable under DOHSA, including the companionship and protection of the decedent, as well as the personal representative's mental pain and suffering." Motion to Strike, ¶ 5. We denied this Motion on December 13, 1985, reasoning, *inter alia*, that Defendant had asserted no new grounds warranting the Court's reversal of Judge Hastings' earlier ruling.

The Motion for Partial Summary Judgment now before this Court has been challenged by Plaintiff, who contends that since this Court has twice denied motions to strike based on similar or identical legal

and factual grounds, this motion must also be rejected. We are not convinced for two reasons. First, as Defendants point out in their Reply to Plaintiff's Response, a motion to strike, under Rule 12(f), Fed.R. Civ.P., relates to the initial pleading and its sufficiency, and does not preclude the subsequent filing of a motion for summary judgment under Rule 56(b), Fed.R.Civ.P. Second, and far more compelling, this Court now has before it a Supreme Court ruling rendered subsequent to the denial of Defendants' second Motion to Strike, which sheds important new light on the question of DOHSA's preemptive effect upon recovery for damages under state wrongful death statutes. The significance of this case, *Offshore Logistics, Inc., et al. v. Tallentire et al.,* —— U.S. ——, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986), will be discussed below.

## II.

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In applying this standard, the Eleventh Circuit recently explained:

> In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes [v. S.H. Kress & Co.]*, 398 U.S. [144] at 157, 90 S.Ct. [1598] at 1608 [26 L.Ed.2d 142]; [*Environmental Defense Fund v.] Marsh,* 651 F.2d [983] at 991. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.,* 655 F.2d 598, 602 (5th Cir. 1981). If the record presents factual is-

sues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronics [Techniques, Inc. v. Wackenhut Protective Systems, Inc.],* 669 F.2d [1026] at 1031; *Croley v. Matson Navigation Co.,* 434 F.2d 73, 75 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. at 160, 90 S.Ct. at 1609–10; *Marsh,* 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). *See Dalke v. Upjohn Co.,* 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemens v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1502 (11th Cir.1985).

Fully cognizant of our obligation to "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the [summary judgment] motion," *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608, we find, to begin with, that no genuine issues of material fact are in dispute regarding Defendants' Motion for Partial Summary Judgment.

Defendants assert, in support of their motion, that given the circumstances surrounding Plaintiff's decedent's death, the Death on the High Seas Act must be applied, as a matter of law. In paragraph 1 of their Motion, Defendants state that "Plaintiff's Amended Complaint alleges that [Plaintiff's decedent] died while snorkeling immediately off the beaches of Cozumel, Mexico." In her Response, Plaintiff disputes this characterization of the facts set forth in her Amended Complaint, pointing to paragraph # 15 of her original Complaint, which states:

> That as a direct and proximate result of the above described negligence of the Defendant, the decedent, Clyde Moyer, died while ashore in Cozumel, Mexico.

Plaintiff's Response to Defendants' Motion for Partial Summary Judgment, at 7.

Defendants' mischaracterization of Plaintiff's Amended Complaint should not be seen as fatal to Defendants' Motion for Partial Summary Judgment. A close reading of the factual and legal reasoning in Defendants' Motion reveals that Defendants were not seeking to establish that Plaintiff's decedent had actually died at sea. Defendants do not dispute Plaintiff's allegations that the Decedent was brought ashore and was still alive at the time of his arrival onshore. Moreover, Defendants' Motion for Partial Summary Judgment does not depend upon the Court's establishing as undisputed the fact that decedent's death actually occurred at sea; Defendants seek only to establish that the injury— Clyde Moyer's heart attack—began offshore. Defendants' position is most succinctly stated on page 3 of their Motion for Partial Summary Judgment:

> [I]t is clear that despite Plaintiff's suggestions of negligent acts occurring on shore, Mr. Moyer's heart attack began in the open seas off Cozumel, Mexico where he was snorkeling, and it is this injury that gave rise to a cause of action.

Plaintiff does not dispute the one pivotal fact which Defendants must establish in order to prevail in their Motion for Partial Summary Judgment. Plaintiff's Response

makes it clear that Plaintiff does not contest Defendants' allegation that decedent's heart attack *began* in the water, in the course of the snorkeling expedition, and not on land. Rather, Plaintiff addresses herself solely to the location where the injury culminated in death. "Since this is undisputably a 'wrongful death action', the *injury* which gives rise to the cause of action in this case is clearly Mr. Moyer's *death*, the location of which occurred ashore." Plaintiff's Response to Defendant's Motion for Partial Summary Judgment, at 5 (emphasis in original). Amplifying upon this argument, Plaintiff asserts: "[T]he 'injury' giving rise to the cause of action is not the decedent's heart attack occurring in the water, but his 'death' ashore. Obviously, if the heart attack had not been fatal or if there had been proper resuscitation procedures, there would be no 'wrongful death' action as a matter of law." *Id.* at 5–6, n. 1.

Plaintiff's acknowledgment that decedent began to experience symptoms suggestive of heart problems while still in the water is evident in Plaintiff's Response to Defendants' Reply on the Defendants' Motion for Partial Summary Judgment. The second paragraph of that Response admits that "there is evidence that the Plaintiff was *assisted* ashore after his difficulties commenced." (Emphasis in original.) At the close of this paragraph, Plaintiff refers to three attached depositions as evidence that Plaintiff's decedent was not dead or on the verge of death when he arrived ashore. On page 30 of the deposition of an eyewitness, Mr. Daryl McWilliams, included as an attachment to Plaintiff's Response, the degree of decedent's distress while still at sea is made quite apparent. Mr. McWilliams stated in this deposition that, while both he and Mr. Moyer were still at sea, he observed that Mr. Moyer "flipped over onto his back," after which he reported that Mr. Moyer told him: "I can't breathe." Immediately following this interchange, Mr. McWilliams reported that Mr. Moyer was told to hang onto a lifebelt and was pulled ashore by another member of the expedi-

tion. Deposition of Daryl McWilliams, March 26, 1985, at 30.

Since there is no dispute between the parties as to the time and place at which Mr. Moyer's apparent heart attack commenced, two questions relevant to the applicability of the Death on the High Seas Act must be addressed: First, should the waters directly offshore at Cozumel, Mexico, be considered "high seas" within the meaning of that term as it appears in DOHSA? Second, does the fact that Mr. Moyer's heart trouble commenced while he was still at sea satisfy the jurisdictional requirements of DOHSA, in light of Plaintiff's allegations that Mr. Moyer's condition may have been substantially worsened by negligent treatment which he allegedly received after being brought ashore?

■ With respect to the applicability of DOHSA to an incident occurring in waters directly offshore at Cozumel, a look at the relevant statutory language fails to provide clear guidance. DOHSA, 46 U.S.C. § 761, states in part:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States....

While no further definition of "high seas" is provided within the statute, the prevailing rule in this Circuit, consistent with rulings in numerous courts outside of this Circuit, is that maritime incidents occurring within the territorial waters of foreign states fall within the ambit of DOHSA. In *Sanchez v. Loffland Brothers Company*, 626 F.2d 1228 (5th Cir.1980), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981), decedent was a seaman employed by defendant on a vessel in operation on Lake Maracaibo, an inland lake in Venezuela. The court in that case ruled that plaintiff's actions for the wrongful death of her husband in the course of his employment could

be brought under DOHSA, even though the cause of action arose within the territorial waters of a foreign country. *Id.* at 1230, n. 4, citing *Public Administrator of the County of New York v. Angela Compania Naviera,* 592 F.2d 58 (2d Cir.1979); *Mancuso v. Kimex, Inc.,* 484 F.Supp. 453 (S.D.Fla. 1980); and *Cormier v. Williams/Sedco/Horn Constructors,* 460 F.Supp. 1010 (E.D.La.1978). In *Mancuso v. Kimex,* this Court upheld the application of DOHSA to a wrongful death action emanating from the crash of a cargo plane into the sea some three hundred feet short of the runway in Kingston, Jamaica. 484 F.Supp. at 455.

Consonant rulings have been made by district courts outside of this Circuit. In *In re Air Crash Disaster Near Bombay, India on January 1, 1978,* 531 F.Supp. 1175 (W.D.Wash.1982), the court held DOHSA to apply to claims made by U.S. citizens pursuant to the crash of an Indian jetliner in Indian territorial waters. Explaining its ruling, the court focused its analysis on the presumed intent of Congress in enacting DOHSA:

> Congress enacted the Death on the High Seas Act in 1920, but prior to that time the Supreme Court had concluded that general maritime law provided no basis for recovery in the case of wrongful death. *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). Since several states had promulgated statutes which provided a remedy for wrongful deaths occurring in state territorial waters which at that time extended a marine league from shore, Congress acted in 1920 to furnish the remedy denied by the courts for deaths occurring beyond state jurisdiction by enacting the Death on the High Seas Act and the Jones Act. *Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Nothing in the Death on the High Seas Act or its legislative history supports the position that Congress intended to limit the scope of this remedy to deaths occurring in international waters.

*Id.* at 1183. *See also Cormier v. Williams/Sedco/Horn Constructors,* 460 F.Supp. 1010 (citing Congressional intent as well as facially inclusive statutory language in support of the applicability of DOHSA to a suit filed pursuant to the drowning of a seaman on an inland river in Peru).

Perhaps most directly on point is *Kuntz v. Windjammer "Barefoot" Cruises, Ltd.,* 573 F.Supp. 1277 (W.D.Pa.1983), *aff'd,* 738 F.2d 423, 738 F.2d 426 (3d Cir.1984), *cert. denied,* 469 U.S. 858, 105 S.Ct. 188, 83 L.Ed.2d 121 (1984), in which decedent had drowned while participating in a scuba diving expedition in Bahamian territorial waters. The court, in applying DOHSA, ruled that the accident, although occurring in the territorial waters of a foreign country, satisfied DOHSA's "high seas" requirements under 46 U.S.C. § 761. The actual depth of the water where a death-precipitating injury has occurred, moreover, has been held to be irrelevant. In *Chute v. United States,* 466 F.Supp. 61 (D.Mass.1978), the court addressed DOHSA's applicability to two deaths resulting from the sinking of a yacht after it struck the wreck of a Navy ship in four-foot seas in Nantucket Sound, beyond the three-mile territorial limit set forth in DOHSA. Upholding the statute's applicability, the court declared that "waters whether a few feet deep or several hundred feet deep, beyond the 3–mile limit would come within the term 'high seas.'" *Id.* at 65. To support this view, the court quoted a statement made during the final House debate on DOHSA, that "[a]nything beyond the 3–mile limit is considered as on the high seas." *Id.* at 65, n. 10, citing 59 Cong.Rec. 4482 (1920).

█ In light of the consistent body of case-law which has applied DOHSA to incidents occurring within the territorial waters of a foreign country, this Court finds that the apparent onset of Plaintiff's decedent's heart attack within Mexican territorial waters does not disqualify Plaintiff's wrongful death action from United States jurisdiction under DOHSA, provided that we also find—as we do—that the cause of

action bears a significant relationship to traditional maritime activity, a requisite for admiralty jurisdiction under *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Turning to this latter inquiry, we find ample authority supporting the view that the cause of action here falls within the ambit of DOHSA.

The traditional "locality" test for determining admiralty jurisdiction, linking such jurisdiction to the mere occurrence of a tort in navigable waters, was set forth in *The Plymouth*, 3 Wall (70 U.S.) 20, 35, 36, 18 L.Ed. 125, (1866):

> [T]he wrong and injury complained of must have been committed wholly upon the high seas or navigable waters, or, at least, the substance and consummation of the same must have taken place upon these waters to be within the admiralty jurisdiction....

In *Executive Jet Aviation, Inc. v. City of Cleveland*, the Supreme Court rejected the "locality" test as both too narrow and too broad. The Court illustrated the arbitrariness of the test by describing its application to certain "perverse and casuistic borderline situations":

> In *Smith & Son v Taylor*, 276 US 179, 72 L Ed 520, 48 S Ct 228 (1928), for instance, a longshoreman unloading a vessel was standing on the pier when he was struck by a cargo-laden sling from the ship and knocked into the water where he was later found dead. This Court held that there was no admiralty jurisdiction in that case, despite the fact that the longshoreman was knocked into the water, because the blow by the sling was what gave rise to the cause of action, and it took effect on the land. Hence, the Court concluded, "[t]he substance and consummation of the occurrence which gave rise to the cause of action took place on land." 276 US at 182, 72 L Ed 520, 48 S Ct 228. In the converse factual setting, however, where a longshoreman working on the deck of a vessel was struck by a hoist and knocked onto the pier, the Court upheld admiralty

jurisdiction because the cause of action arose on the vessel. *Minnie v Port Huron Terminal Co.*, 295 US 647, 79 L Ed 1631, 55 S Ct 884 (1935). See also *The Admiral Peoples*, 295 US 649, 79 L Ed 1633, 55 S Ct 885 (1935).

409 U.S. at 255, 93 S.Ct. at 498.

Further demonstrating the vagueness and overbreadth of the "locality" test, the Court in *Executive Jet Aviation* pointed to its inappropriateness when applied to swimmers in coastal and inland waters:

> If a swimmer at a public beach is injured by another swimmer or by a submerged object on the bottom, or if a piece of machinery sustains water damage from being dropped into a harbor by a land-based crane, a literal application of the locality test invokes not only the jurisdiction of the federal courts, but the full panoply of the substantive admiralty law as well. In cases such as these, some courts have adhered to a mechanical application of the strict locality rule and have sustained admiralty jurisdiction despite the lack of any connection between the wrong and traditional forms of maritime commerce and navigation.

*Id.* at 255, 93 S.Ct. at 498 (footnote omitted).

In addition to criticizing the admiralty test's overbreadth when applied to certain activities occurring in or on navigable waters, the Court pointed to the test's failure to embrace within admiralty jurisdiction certain injuries occurring on land:

> [A]nother indictment of that test is to be found in the number of times the federal courts and the Congress, in the interests of justice, have had to create exceptions to it ... when the tort has no maritime locality, but does bear a relationship to maritime service, commerce, or navigation.... For example,.... the doctrine of unseaworthiness has been extended to permit a seaman or a longshoreman to recover from a shipowner for injuries sustained wholly on land, so long as those injuries were caused by defects in the ship or its gear.

*Id.* at 259–260, 93 S.Ct. at 500, citing *Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 214–215, 83 S.Ct. 1185, 1190–1191, 10 L.Ed.2d 297 (1963).

The new rule laid down by the Supreme Court in *Executive Jet Aviation* addressed the problems attributed to the "locality" test by requiring a cause of action falling under admiralty jurisdiction to have a maritime nexus, or "a significant relationship to maritime activity." *Id.* at 268, 93 S.Ct. at 504 (finding an absence of admiralty jurisdiction where a jet aircraft, after ingesting gulls into its engines on takeoff from an airport along Lake Erie, crashed into the lake). This holding was restricted, however, to the application of admiralty jurisdiction to "aviation tort claims arising from flights by land-based aircraft between points within the continental United States," *id.* at 274, 93 S.Ct. at 507, where the aircraft were only "fortuitously and incidentally connected to navigable waters." *Id.* at 273, 93 S.Ct. at 507. It explicitly declined to exclude from admiralty jurisdiction intercontinental flights, because jet travel in such instances could be seen as "performing a function traditionally performed by waterborne vessels." *Id.* at 271, 93 S.Ct. at 506 (footnote omitted).[1]

Applying the "significant relationship" test set forth in *Executive Jet Aviation* to the facts here, we find that the application of admiralty jurisdiction is clearly warranted. Plaintiff's decedent was a paying passenger aboard a cruise ship which arranged, as one of the maritime recreational activities offered to its passengers, a snorkeling expedition off Cozumel, Mexico. The relationship between the Defendant cruise ship company, NCL, and the Defendant A. Jack Chappell Sales, Inc., which organized and led the snorkeling trip, is unambiguously established by both parties in their Pre-Trial Stipulation: Defendant Chappell "was an agent or employee of [NCL] and acting in the course and scope of said agency or employment in connection with all material events to this lawsuit." Pre-Trial Stipulation at 2.

Plaintiff, in her Response to Defendant's Reply on the Defendant's Motion for Summary Judgment, argues that "recreational activities such as snorkeling do not fall within the admiralty jurisdiction of the federal courts since they do not bear a sufficient 'maritime nexus'...." Plaintiff's Response at 3. As authority for this claim, Plaintiff cites a number of cases in which certain water-based recreational activities have been held to fall outside the parameters of admiralty jurisdiction. In *Crosson v. Vance*, 484 F.2d 840 (4th Cir.1973), the first case cited by Plaintiff, the action involved injuries sustained by a water skier *on an inland waterway* when the powerboat pulling the skier ran into shoals. The Fourth Circuit, in rejecting the applicability of admiralty jurisdiction, cited the lack of a relationship between inland water recreation and the underlying purpose of admiralty jurisdiction; namely, "to provide a uniform body of law for the governance of domestic and foreign shipping, *engaging in the movement of commercial vessels from state to state and to and from foreign states.*" *Id.* at 840 (emphasis added).

The other three cases cited by Plaintiff in support of her contention that snorkeling lies outside of admiralty jurisdiction also involve injuries sustained on inland bodies of water which did not arise from or relate to commercial shipping. *Onley v. South Carolina Electric & Gas Company*, 488 F.2d 758 (4th Cir.1973) (injury caused when plaintiff struck a submerged boat ramp after diving into an inland lake whose level was artificially controlled by defendant power company); *Roberts v. Grammer*, 432 F.Supp. 16 (E.D.Tenn.1977) (injuries caused by collision of two small noncommercial pleasure boats on a small landlocked lake wholly contained within the State of Tennessee); *Rubin v. Power Authority of the State of New York*, 356 F.Supp. 1169

---

**1.** Subsequent to the Supreme Court's ruling in *Executive Jet Aviation,* admiralty jurisdiction has been allowed to stand in wrongful death actions involving intercontinental flights. *See,* *e.g., In re Air Crash Disaster Near Bombay, India on January 1, 1978,* 531 F.Supp. 1175 (W.D. Wash.1982).

(W.D.N.Y.1973) (death of two divers who drowned after being sucked into the water intake conduits at defendant's power plant, along the Niagara River in upstate New York).

The facts of the case before this Court are distinct from those set forth in the aforementioned cases cited by Plaintiff. In the case here, the maritime nexus lies not in the nature of the activity being engaged in at the time of injury or death. Indeed, an accident relating solely to a shore-based snorkeling expedition might not qualify for admiralty jurisdiction under the *Executive Jet Aviation* rule. The nexus here lies rather in the relationship of the snorkeling expedition, on which decedent sustained his ultimately death-inflicting injury, to a commercial, high seas shipping venture featuring travel from the Port of Miami, Florida, via the Atlantic Ocean and the Gulf of Mexico, to Cozumel, Mexico. The snorkeling expedition, organized by an "agent or employee" of Defendant cruise ship company, Pre-Trial Stipulation at 2, can only be viewed as integrally connected to a traditional maritime activity. *See Kuntz v. Windjammer "Barefoot" Cruises, Ltd.,* 573 F.Supp. 1277 (scuba diving accident where there was a commercial vessel in navigable waters, providing a maritime service to passengers for a fee, with the service promoted, conducted, and supervised by a member of the crew).

■ The final issue to be addressed by this Court is Plaintiff's position that, because Plaintiff's decedent did not die until being taken ashore, her cause of action should not be heard under this Court's admiralty jurisdiction. We find this argument to be wholly without authority. Repeatedly the courts have declared that wrongful death actions deriving from an injury on the high seas fall under admiralty jurisdiction, even if death did not occur until the injured party had been brought on land. "The right to recover for death depends upon the law of the place of the act or omission that caused it and not upon that of the place where death occurred." *Vancouver S.S. Co., Ltd. v. Rice,* 288 U.S.

445, 447, 53 S.Ct. 420, 421, 77 L.Ed. 885 (1933) (plaintiff's intestate died on land of injuries sustained aboard cargo ship during loadings). *See also Public Administrator of the County of New York v. Angela Compania Naviera, S.A.,* 592 F.2d 58 (2d Cir.1979) (DOHSA deemed applicable where seaman died in an Athens hospital eight months after receiving allegedly inadequate medical treatment on board a freighter); *Chute v. United States,* 466 F.Supp. 61 (D.Mass.1978) (DOHSA deemed applicable to plaintiff's decedent who died in a Massachusetts hospital after being taken ashore following the sinking of a yacht in Nantucket Sound); *Touhey v. Roos-Loos Medical Group,* (1980, Ct. of App.Cal.) 1981 A.M.C. 1218 (DOHSA deemed applicable where decedent, injured aboard defendant's cruise ship, died onshore approximately one year after the injury).

■ Plaintiff, in opposing DOHSA's applicability to the facts here, also alleges that land-based negligence *prior* to the snorkeling expedition rendered admiralty jurisdiction inappropriate. She states that the expedition was organized by Defendant A. Jack Chappell Sales, Inc., "a purely land-based corporation ... which plays no part in the operation and management of the Defendant NCL's vessels." Plaintiff's Response to Defendant's Motion for Partial Summary Judgment, at 10. Among the land-based acts of negligence alleged against Defendant Chappell are the use of inadequate pre-expedition health screening procedures and "the absence of required [on-land] training and instruction for passengers participating in the program." *Id.* at 10–11. Here again, authority is clear that a cause of action under DOHSA accrues at the time and place where an allegedly wrongful act or omission "was consummated" in an actual injury, not at the point were previous or subsequent negligence allegedly occurred. *Chute v. United States,* 466 F.Supp. at 64. In *Chute,* where a private yacht sank after striking an unmarked sunken Navy vessel in four-foot shoals, plaintiffs contended that

defendant's "wrongful act" was not the failure to adequately mark or remove the wreck, but was rather the *decision* not to better mark or remove the wreck, which decision was made ashore....

*Id.* at 64. The court rejected this line of reasoning, declaring that " 'the foundation of the right to recover [under DOHSA] is a wrongful act or omission *taking effect* on the high seas.' " *Id.*, quoting *Lacey v. L.W. Wiggins Airways, Inc.*, 95 F.Supp. 916, 918 (D.Mass.1951). In *Lacey*, defendant's alleged failure to inspect a plane properly on land was held to be grounds for a DOHSA claim based on the plane's subsequent crash into the high seas. *Lacey*, 593 F.Supp. at 917–918. *See also Shaw v. Grumman Aerospace Corp.*, 593 F.Supp. 1066 (S.D.Fla.1984), *aff'd*, 778 F.2d 736 (11th Cir.1985) (DOHSA deemed applicable in suit against aircraft manufacturer seeking recovery for a death caused by the sudden crash of a carrier-launched plane which allegedly malfunctioned because of design defects).

In light of existing authority, the Court finds that DOHSA is applicable to the facts here. Plaintiff's allegations that Defendants acted negligently both before and after the snorkeling expedition do not defeat admiralty jurisdiction. The key operative fact, disputed by none of the parties, is that the decedent's illness commenced while he was participating in the snorkeling expedition; i.e., while he was on the high seas, as defined by DOHSA, in connection with an activity bearing a substantial relationship to a traditional maritime activity—the operation of a cruise ship on the high seas.

This Court further finds, pursuant to the Supreme Court's recent decision in *Offshore Logistics Inc. v. Tallentire*, — U.S. —, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986), that Plaintiff here shall be barred from seeking recovery under the Florida Wrongful Death Act or any other state wrongful death statute. The Supreme Court's ruling in *Tallentire* states unequivocally that state wrongful death statutes are pre-empted by DOHSA where it applies. *Id.* at —, 106 S.Ct. at 2500. As DOHSA only

allows recovery for pecuniary damages, Plaintiff shall be barred from seeking non-pecuniary damages in this cause of action.

The Court having carefully reviewed the record in this cause, having considered the memoranda submitted by the parties, and being otherwise fully advised in the matter, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion for Partial Summary Judgment on the Issue of the Applicability of the Death on the High Seas Act be and the same is hereby GRANTED.