Neville MOTTS

v.

M/V GREEN WAVE, Its Engine, Tackle,
in Rem, and Its Owner and Operator,
Central Gulf Lines, Inc., et al.

No. CIV. A. G–98–127.

United States District Court,
S.D. Texas.
Galveston Division.

Nov. 6, 1998.

Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, for Neville Motts.

Robert L. Klawetter, Eastham Watson Dale & Forney, Houston, TX, for Central Gulf Lines, Inc, LMS Shipmanagement, Inc.

Ronald L. White, Brown Sims Wise & White, Houston, TX, Mediator.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT LMS SHIPMANAGEMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KENT, District Judge.

This a wrongful death and survival action resulting from injuries Neville Motts allegedly suffered on February 15, 1998 while serving as Chief Engineer aboard the M/V GREEN WAVE. Mr. Motts ultimately perished on March 20, 1998, and, thus, Plaintiff, Mr. Motts' wife, brings this case on her own behalf and as personal representative of Mr. Motts' estate. Presently before the Court is Defendant LMS Shipmanagement's Motion for Partial Summary Judgment, wherein Defendant LMS Shipmanagement argues that Plaintiff's negligence claim brought under general maritime law, Plaintiff's claim for damages under Texas wrongful death and survival statutes, and Plaintiff's prayer for punitive damages are each and all disallowed by law. For the reasons that follow, Defendant's Motion is **GRANTED IN PART** with respect to Plaintiff's claims under general maritime law and **DENIED IN PART** with respect to Plaintiff's claims under Texas law.

### I.  FACTUAL HISTORY

Plaintiff is the widow of Neville Motts, the former chief engineer aboard the M/V GREEN WAVE, a vessel owned and operated by Defendant Central Gulf Lines, Inc. ("CGL"). Defendant LMS Shipmanagement, Inc. ("LMS"), a Louisiana corporation, is the managing company for Defendant CGL. Defendant LMS had no employees of its own aboard the M/V GREEN WAVE at the time of Decedent's accident, but it employs personnel in its New Orleans office to ensure that injured or ill crew members on CGL ships such as the M/V GREEN WAVE receive proper and timely medical care.

On February 15, 1998, Decedent Motts suffered a broken pelvis and hip when he was struck by a massive cylinder head and pinned against a rail on the GREEN WAVE. The ship's officers reported the injury to Defendant LMS and informed LMS officers in New Orleans that Motts's medical condition was subject to potential complication because of a history of cardiovascular surgeries. However, no immediate action was taken. Instead, Motts was placed upon a mattress in the ship's office, where he remained for several weeks. He apparently received no medical attention.

The GREEN WAVE remained on the high seas for a time, primarily because the vessel was experiencing engine problems. The GREEN WAVE eventually requested and received assistance from a helicopter-equipped Coast Guard vessel. The responding Coast Guard personnel were not informed that Motts required immediate medical assistance, and he remained confined to the mattress despite the presence of the Coast Guard helicopter. The GREEN WAVE remained under tow by the Coast Guard for almost two weeks before reaching New Zealand. During that time, LMS officers in New Orleans continued to communicate with the GREEN WAVE about Motts's condition. However, he did not receive medical attention until the vessel reached New Zealand. From there, he was evacuated to Houston, where he underwent hip surgery on March 10. On March 20, Motts, apparently weakened from his travails, died of a heart attack.

Before his death, Motts had filed suit against Defendant CGL seeking damages under the Jones Act, 46 U.S.C.App. § 688, and general maritime law for negligence, unseaworthiness, and maintenance and cure. After his death, Motts's widow filed an amend-

ed complaint substituting her as Plaintiff. Subsequently, Mrs. Motts filed a second amended complaint adding claims of negligence and gross negligence under general maritime law or the Texas Wrongful Death Statute against Defendant LMS.

Now before this Court is Defendant LMS's motion for partial summary judgment. Defendant LMS argues that the Death on the High Seas Act, 46 U.S.C.App. §§ 761 *et seq.* ("DOHSA"), governs Plaintiff's claims against it. Because DOHSA controls, Defendant LMS argues, the Court must grant summary judgment against Plaintiff's claims for non-pecuniary damages. Moreover, LMS argues, DOHSA preempts all claims for wrongful death and survival damages made under the general maritime law or Texas wrongful death and survival statutes and requires the Court to grant summary judgment against all such claims asserted by Plaintiff.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691 (S.D.Tex.1992)(noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## III. ANALYSIS

In this wrongful death and survival action, Plaintiff seeks, among other damages, recovery for her husband's pre-death pain and suffering, her own pain and suffering, the loss of his society, the mental anguish she has suffered since his death, and punitive damages for Defendant LMS's alleged gross negligence.[1] These damages sought by Plaintiff have been categorized as non-pecuniary by courts. *See, e.g., Dooley v. Korean Air Lines Co., Ltd.,* — U.S. ——, 118 S.Ct. 1890, 1892, 141 L.Ed.2d 102 (1998) (pre-death pain and suffering non-pecuniary loss); *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 619, 98 S.Ct. 2010, 2011, 56 L.Ed.2d 581 (1978) (loss of society non-pecuniary); *Guevara v. Maritime Overseas Corp.,* 59 F.3d 1496 (5th Cir.1995) (punitive damages non-pecuniary in nature); *Rohan for Rohan v. Exxon Corp.,* 896 F.Supp. 666 (S.D.Tex.1995) (loss of society and mental anguish each non-pecuniary in nature). Texas wrongful death law permits recovery of pecuniary, non-pecuniary, and punitive damages. *See* Tex. Civ. Prac. & Rem.Code Ann. § 71.002 (Vernon 1989). Likewise, general maritime law permits recovery for non-pecuniary damages such as loss of society. *See Sea–Land Services v. Gaudet,* 414 U.S. 573, 587–88, 94 S.Ct. 806, 816, 39 L.Ed.2d 9 (1974). However, Defendant LMS argues that Plaintiff is not entitled to recovery of those damages because DOHSA governs this action, and DOHSA prohibits recovery of non-pecuniary damages and entirely preempts all state law and general maritime law causes of action.

1. Plaintiff also seeks damages for funeral and burial expenses, medical expenses, loss of wages to which the decedent would have been entitled, loss of support, and loss of inheritance.

■ With respect to DOHSA's effect on claims for non-pecuniary damages and causes of action asserted under state or general maritime law, Defendant LMS is correct. DOHSA, which provides the exclusive cause of action for deaths "caused by wrongful act, neglect, or default occurring on the high seas...," 46 U.S.C.App. § 761, does not allow damages for non-pecuniary losses. 46 U.S.C.App. § 762; *Dooley, —— U.S. at ——, 118 S.Ct. at 1894; Miles v. Apex Marine Corp.,* 498 U.S. 19, 31, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990). Moreover, where DOHSA applies, it preempts all survival actions under general maritime law and all wrongful death and survival actions under state law. *See Dooley, —— U.S. at ——,* 118 S.Ct. at 1894–95; *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 232, 106 S.Ct. 2485, 2499, 91 L.Ed.2d 174 (1986). Consequently, if DOHSA governs this action, the Court must grant summary judgment dismissing all of Plaintiff's claims for non-pecuniary damages and all causes of action asserted under both the general maritime law and Texas law.

■ The obvious issue, then, is whether DOHSA applies to this action. As its name might imply, the Death on the High Seas Act is limited in its application to areas not within the territorial waters of the states. 46 U.S.C.App. § 767. This means that, with a few exceptions not relevant to this action,[2] DOHSA governs only those actions arising more than a marine league beyond the shoreline of the nearest state. Plaintiff argues that because Defendant LMS's negligent action—the decision not to evacuate the decedent or provide medical attention onboard the M/V GREEN WAVE—occurred onshore, as did the decedent's ultimate death, DOHSA cannot govern this action. Defendant argues that the situs of the actual incident leading to the decedent's injury and ultimate death controls the question of DOHSA's applicability.

Neither party is precisely correct. DOHSA provides a cause of action "[w]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas ..." 46 U.S.C.App. § 761. The meaning of this text in cases where the wrongful act actually occurred on land, as Plaintiff alleges here, is not immediately discernible. However, the great weight of courts considering the question of where the wrongful act "occurred" in cases where land-based negligence contributed to a death on the high seas have concluded that the wrong must be "consummated" upon the high seas for DOHSA to apply. The case of *Lacey v. L.W. Wiggins Airways, Inc.,* 95 F.Supp. 916 (D.Mass.1951), often cited in such actions, offers instructive language:

The court concludes that when the statute speaks of "wrongful act, neglect, or default occurring on the high seas", it contemplates the substance of the occurrence which resulted in death and gave rise to a right to recover. The substance of the occurrence here was not merely the act or omission to act attributable to the respondent while the craft was on land. If the respondent failed to make a proper inspection of the craft, or failed to remedy a defect properly, or failed to notify the owner of defects discovered during inspection and repair, the effect of such failure was not spent until the plane fell to sea.

95 F.Supp. at 918; *see also Bergen v. F/V St. Patrick,* 816 F.2d 1345, 1348 (9th Cir.1987); *Moyer v. Rederi,* 645 F.Supp. 620, 628 (S.D.Fla.1986); *Chute v. United States,* 466 F.Supp. 61, 64 (D.Mass.1978). Courts have applied this principle and held that DOHSA applied even in instances where both the alleged negligence and the actual death occurred onshore. *See, e.g., Moyer,* 645 F.Supp. at 628 (applying DOHSA where the decedent died ashore after suffering a heart attack while snorkeling in Cozumel, Mexico).

■ In seeking to determine where Defendant LMS's wrong was consummated, the Court is mindful that Plaintiff in this action is alleging separate wrongs by separate tortfeasors. The first wrong alleged by Plaintiff is the accident aboard the M/V GREEN WAVE. There, Plaintiff alleges, the negli-

---

**2.** Because the territorial waters of Texas extend three marine leagues offshore, *see* Tex. Nat. Res. Code Ann. § 11.012, this Court has held that DOHSA does not govern wrongful deaths occurring within that distance. *See Blome v. Aerospatiale Helicopter Corp.,* 924 F.Supp. 805, 814 (S.D.Tex.1996).

gence of Defendant CGL and the unseaworthiness of its vessel caused the accident that left the decedent with a broken pelvis and hip. The second wrong alleged by Plaintiff is the ultimately fatal worsening of the decedent's condition, a worsening caused by Defendant LMS's alleged gross negligence. Unlike the first wrong, this second injury is not of a type that the Court can pinpoint to a specific location on the high seas based upon the summary judgment evidence before it. Under the reasoning of the cases cited above, the first wrong was obviously consummated upon the high seas when the decedent suffered the injury, despite the possibility that the unseaworthy condition existed before the M/V GREEN WAVE reached the high seas. *See Lacey*, 95 F.Supp. at 918. As to the second wrong, the injury was either the decedent's death or the moment when the complications allegedly caused by Defendant LMS's negligence aggravated the decedent's first injury from merely painful and immobilizing to mortal. As the latter option would require calculations beyond a court's abilities,[3] this Court will decline to choose it in favor of the former.

Affixing the moment of consummation to the decedent's death is a result that is not at odds with the opinions of the distinguished courts that have preceded this Court on this issue. In those cases, the injuries complained of were all of a type easily pinpointed to a specific moment. In *Lacey*, the wrong was consummated when the decedent's plane crashed into the Atlantic Ocean beyond a marine league from shore. 95 F.Supp. at 917. In *Bergen v. F/V St. Patrick*, the moment of consummation came when the decedent, who ultimately perished from exposure, had to abandon his damaged ship in heavy seas. 816 F.2d at 1347. Similarly, the wrong in the case of *Chute v. United States* was consummated when the decedent's ship struck an underwater obstruction more than one marine league from shore and sank. 466 F.Supp. at 63. Finally, the moment of consummation in *Moyer v. Rederi* came when the decedent suffered the first signs of a heart attack while snorkeling in the waters off of Cozumel, Mexico. 645 F.Supp. at 623. Unlike the wrongs in all of those cases, the wrong alleged by Plaintiff in the case at bar is not readily separated into consummation and denouement. Here, the alleged negligence occurred ashore. *Cf. Lacey*, 95 F.Supp. at 918 (recognizing that the negligent act occurred ashore). This negligence on the part of Defendant LMS reached its final outcome when the decedent died several days after undergoing surgery to repair his injuries. The Court is unconvinced that the moment of consummation can practically be affixed to any time or place other than that of the death. The death, of course, occurred ashore, in a Houston hospital. Accordingly, the Court must hold that DOHSA does not apply.[4]

---

3. Not even the highly competent counsel for either side have attempted to convince the Court that it should pursue such a method to determine when the alleged wrong was consummated. As neither side has ventured to argue this somewhat metaphysical position, the Court concludes that it is in no position to make such an argument for them.

4. Even if the Court had arrived at a different conclusion regarding the metaphysical difficulties of affixing the consummation to a point other than that of the decedent's death, it could not grant summary judgment dismissing Plaintiff's state law claims. Although Plaintiff has introduced a statement from the decedent's attending physician that the cause of death was a myocardial infarction stemming from the injuries that necessitated a total hip replacement, it is unclear precisely where, figuratively speaking, the decedent's "plane fell to sea," *see Lacey*, 95 F.Supp. at 918, and this fatal complication matured, so to speak. Plaintiff's evidence does not convince the Court that Defendant LMS's wrong, under this theory, was consummated onshore, that is, that the decedent's injury matured from serious to fatal after his arrival in Texas as opposed to over the course of the long days he spent languishing unattended on a mattress onboard the M/V GREEN WAVE. However, summary judgment dismissing Plaintiff's claims under Texas law would be inappropriate. Defendant LMS has not shown the Court that there is an absence of a genuine issue of material fact as to where the alleged wrong was consummated. While Defendant LMS bears no burden of producing evidence showing such an absence, *see Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554, it does bear the burden of showing the Court that there is an absence of evidence. *See id.* As the Supreme Court explained in *Celotex*, this burden may be discharged by merely "pointing out" to the Court that there is an absence of evidence. *See id.* Here, Defendant LMS has made no such showing. Although Defendant LMS offered compelling arguments why DOHSA would require dis-

■ As to Plaintiff's claims under the general maritime law, the Court must reach a similar conclusion. Although Plaintiff's cause of action against Defendant CGL is plainly cognizable in admiralty, the same is not the case for her cause of action against Defendant LMS. To invoke admiralty jurisdiction in a case such as this one, the incident must satisfy the requirements of locality and connection to maritime activity. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 544, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995). Under the locality prong of the two-part *Grubart* test, the damage or injury must have taken place on navigable waters or, if the injury occurred on land, must have been caused by a vessel on navigable waters. *Id.* As the Court has already determined, the injury took place on land, as the result of a negligent act on land. Consequently, the incident does not satisfy the locality requirement. The Court need not examine the nexus portion of the test to conclude that this cause of action is not subject to admiralty jurisdiction. Because this cause of action is not cognizable under admiralty jurisdiction, the Court accordingly holds that general maritime law does not apply.

■ Plaintiff may properly maintain a cause of action for wrongful death under Texas law. *See* Tex. Civ. Prac. & Rem.Code Ann. § 71.031. Under 28 U.S.C. § 1367, this Court may assert supplemental jurisdiction over Plaintiff's state law claim. When a District Court properly has original jurisdiction over a matter, 28 U.S.C. § 1367(a) allows the court to exercise supplemental jurisdiction over related state law claims involved in the case arising from common facts. *See Noble v. White,* 996 F.2d 797, 799 (5th Cir.1993). Section 1367 provides in relevant part:

(a) Except as provided in subsection (b) and © or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve joinder or intervention of additional parties ...

The Court has original jurisdiction over Plaintiff's claim in admiralty against Defendant CGL by virtue of both 28 U.S.C. § 1333 and 28 U.S.C. § 1331. Pursuant to § 1367(a), then, this Court exercises its supplemental jurisdiction over Plaintiff's state law claims against Defendant LMS. Accordingly, the Court holds that Texas law governs Plaintiff's claims against Defendant LMS.

Because Texas law governs Plaintiff's wrongful death and survival claims against Defendant LMS, and because Texas law permits a surviving spouse to recover for non-pecuniary and punitive damages, *see* Tex. Civ. Prac. & Rem.Code Ann. § 71.002, Defendant's Motion for Partial Summary Judgment is **GRANTED IN PART** with respect to Plaintiff's claims under the general maritime law and **DENIED IN PART** with respect to Plaintiff's claims under Texas law and claims for non-pecuniary and punitive damages. Consequently, Plaintiff's claims under the general maritime law are **DISMISSED WITH PREJUDICE.**

## IV. CONCLUSION

The Court finds that Plaintiff has produced sufficient evidence to conclude that Texas law governs her wrongful death and survival claims against Defendant LMS. These claims remain set for trial before the Court on February 16, 1999. Without commenting on the merits of the claim or defenses asserted, the Court will examine them again at that time.

For the reasons set forth above, Plaintiff's claims under general maritime law are **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable

---

missal of Plaintiff's state law claims, it failed to point out any absence of evidence that the alleged wrong was consummated outside of DOHSA's purview. Consequently, the Court remains unconvinced that DOHSA governs this action even if the wrong was consummated at some point before the decedent's death.

costs and expenses incurred herein to date. In due course, the Court will enter a Final Judgment on all claims dismissed herein.

**IT IS SO ORDERED.**