Deborah BROWN, et al.

v.

EUROCOPTER, S.A., American
Eurocopter Corp., and
Ampep, PLC.

Civil Action No. G–98–529.

United States District Court,
S.D. Texas,
Galveston Division.

March 23, 1999.

Ted C. Litton, Royston Rayzor Vickery and Williams, Houston, TX, for Ted Litton.

James Housley Furman, Byrd Davis & Eisenberg, Austin, TX, for Deborah Brown, David Nathan Brown, Christi Brown.

Kenneth Ross Citti, Citti & Crinion, Houston, TX, for American Eurocopter Corporation.

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff, the widow of a helicopter pilot killed when his aircraft crashed into a fixed oil platform in the Gulf of Mexico and sank into the ocean, brings suit under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* ("OCSLA"). Now before the Court is Plaintiff's Motion for Partial Summary Judgment seeking the application of that statute rather than the Death on the High Seas Act, 46 U.S.C.

§ 761 *et seq.* ("DOHSA"). For the reasons set forth below, Plaintiff's Motion is **DENIED.**

## I. FACTUAL SUMMARY

At the time of his death, David Nathan Brown was a helicopter pilot for Petroleum Helicopters, Inc. ("PHI"). On November 28, 1996, Brown was flying two platform workers, James Williamson and John Paul Richards, from one PHI fixed platform to another when his helicopter began experiencing mechanical problems.[1] He attempted to make an emergency landing on a nearby platform. However, the aircraft had sustained a critical loss of tail rotor control. As Brown approached the platform, the helicopter crashed into it, bouncing off and sinking into the waters of the Gulf of Mexico. Brown was apparently killed when the aircraft's main rotor blades sliced through its cockpit, before it had hit the water.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an oth-

erwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## III. ANALYSIS

Neither side disputes that where OCS-LA and DOHSA each provides an independent basis for jurisdiction, DOHSA governs to the exclusion of OCSLA. *See* 43 U.S.C. § 1333(a)(2)(A) (applying the laws of adjacent states to injuries on certain portions of the Outer Continental Shelf "to the extent that they are applicable and not inconsistent with this subchapter or with the other Federal laws and regulations"); *cf. also Smith v. Penrod Drilling Corp.,* 960 F.2d 456, 459 (5th Cir.1992) (holding that maritime law governed an indemnity contract between a drilling company and an oil corporation concerning personal injury claims brought by employees aboard a platform operated jointly by those parties); *Recar v. CNG Producing Co.,* 853 F.2d 367, 369 (5th Cir.1988) (holding OCS-LA applicable to a worker's suit against the owner of a platform on which he was

---

1. The estates of Williamson and Richards each filed wrongful death lawsuits. In each case, Plaintiffs brought suit under OCSLA. On January 7, 1999, this Court issued an order granting Defendants' Motion for Partial Summary Judgment with respect to Plaintiffs' consolidated claims for punitive and non-pe-

cuniary damages under OCSLA, holding that DOHSA supplied the governing law with respect to those lawsuits. On January 29, the Court heard Plaintiff's Motion to Reconsider and again held that DOHSA supplied the law governing the actions.

injured but stating that if the district court on remand found an independent basis for admiralty jurisdiction it should apply maritime law); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223, 1229 (5th Cir.1985) (applying OCSLA to an offshore oil exploration contract but noting that "where admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law"). The question thus becomes whether DOHSA supplies a basis for jurisdiction.

In *Executive Jet Aviation, Inc. v. City of Cleveland,* the Supreme Court stated that DOHSA confers upon federal admiralty courts jurisdiction over claims of wrongful death on the high seas. 409 U.S. 249, 263–64, 93 S.Ct. 493, 502, 34 L.Ed.2d 454 (1972). Some federal courts have read that statement as indicating that where its requirements are met, DOHSA supplies admiralty jurisdiction independent of any doctrinal test for the existence of such jurisdiction. *See Baker v. Bell Helicopter/Textron, Inc.,* 907 F.Supp. 1007, 1010 (N.D.Tex.1995) (*citing Palischak v. Allied Signal Aerospace Co.,* 893 F.Supp. 341, 344–45 (D.N.J.1995); *Kunreuther v. Outboard Marine Corp.,* 757 F.Supp. 633, 634 (E.D.Pa.1991)). For purposes of jurisdiction under DOHSA, actions occurring on the high seas are those actions arising more than a marine league beyond the shoreline of the nearest state. *See* 46 U.S.C. § 767. Plaintiff argues that because Brown's death occurred on or just above a fixed platform—which under OCSLA is the equivalent of dry land rather than the high seas—DOHSA cannot govern this action. In response, Defendant argues that the situs of the actual incident leading to the decedent's injury and ultimate death controls the question of DOHSA's applicability.

Neither party is precisely correct. DOHSA provides a cause of action "[w]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas ..." 46 U.S.C.App. § 761. The meaning of this text in cases where the death essentially occurred on land, as Plaintiff alleges here, is not immediately discernible. However, the great weight of courts considering the question of where the wrongful act "occurred" have concluded that the wrong must be "consummated" upon the high seas for DOHSA to apply. The case of *Lacey v. L.W. Wiggins Airways, Inc.,* 95 F.Supp. 916 (D.Mass.1951), often cited in such actions, offers instructive language:

> The court concludes that when the statute speaks of "wrongful act, neglect, or default occurring on the high seas", it contemplates the substance of the occurrence which resulted in death and gave rise to a right to recover. The substance of the occurrence here was not merely the act or omission to act attributable to the respondent while the craft was on land. If the respondent failed to make a proper inspection of the craft, or failed to remedy a defect properly, or failed to notify the owner of defects discovered during inspection and repair, the effect of such failure was not spent until the plane fell to sea.

95 F.Supp. at 918; *see also Bergen v. F/V St. Patrick,* 816 F.2d 1345, 1348 (9th Cir. 1987); *Moyer v. Rederi,* 645 F.Supp. 620, 628 (S.D.Fla.1986); *Chute v. United States,* 466 F.Supp. 61, 64 (D.Mass.1978). Courts have applied this principle and held that DOHSA applied even in instances where both the alleged negligence and the actual death occurred onshore. *See, e.g., Moyer,* 645 F.Supp. at 628 (applying DOHSA where the decedent died ashore after suffering a heart attack while snorkeling in Cozumel, Mexico).

In seeking to determine where the alleged wrong was consummated, the Court notes that both parties agree that the mechanical problems suffered by Brown's helicopter originated and reached the point of crisis above the high seas. Assigning the point of consummation to the moment when the aircraft's mechanical problems fully manifested themselves is a conclusion consistent with those reached

by other courts. In *Bergen v. F/V St. Patrick*, the moment of consummation came when the decedent, who ultimately perished from exposure, had to abandon his damaged ship in heavy seas. 816 F.2d at 1347. Similarly, the wrong in the case of *Chute v. United States* was consummated when the decedent's ship struck an underwater obstruction more than one marine league from shore and sank. 466 F.Supp. at 63. Finally, the moment of consummation in *Moyer v. Rederi* came when the decedent suffered the first signs of a heart attack while snorkeling in the waters off of Cozumel, Mexico. 645 F.Supp. at 623. Like the wrongs in all of those cases, the moment of consummation here was separate from the moment of the victim's death. Because the alleged wrong was consummated upon the high seas, DOHSA applies.

▮ Alternatively, some courts have applied the traditional maritime analysis to determine whether DOHSA applies. These courts have applied DOHSA to aircraft torts that have a maritime locality and some relationship to maritime commerce. *See Smith v. Pan Air Corp.*, 684 F.2d 1102, 1109 (5th Cir.1982) (*citing Executive Jet*, 409 U.S. at 264, 93 S.Ct. at 502 (noting with apparent approval instances where courts sustained maritime jurisdiction over aircraft cases)). The locality inquiry is relatively simple. Contrary to the argument made by Plaintiff, the precise point of a plaintiff's death is not the lynchpin for determining whether the locality requirement is satisfied. Instead, the Court looks to whether the alleged negligence "became operative while the aircraft was on or over navigable waters." *Id.* Because the aircraft began experiencing problems over the Gulf of Mexico, the incident forming the basis of the claim clearly satisfies the maritime locality requirement. The two-pronged test for determining the claim's connection to maritime activity is likewise satisfied. First, the Court must examine the general features of the incident at the heart of the

claim to determine whether it could have a "potentially disruptive impact on maritime commerce." *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 538, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995) (*citing Sisson v. Ruby*, 497 U.S. 358, 363, 110 S.Ct., 2892, 2896, 111 L.Ed.2d 292 (1990)). This prong of the inquiry focuses not on any actual impact the incident had but rather on whether the incident was of a type or class of incidents that poses "more than a fanciful risk to commercial shipping." *Id.*, at 538, 115 S.Ct. at 1051. The sinking of an aircraft in navigable waters is well within that class of incidents. *See Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 675, n. 5, 102 S.Ct. 2654, 2658, n. 5, 73 L.Ed.2d 300 (1982) (*citing Executive Jet*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454, for the example of the potential navigation hazard posed by the sinking of an aircraft). Second, the Court must determine whether the general character of the activity giving rise to the incident bears a "substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 539–40, 115 S.Ct. at 1051. Like the first prong, this element of the connection inquiry is satisfied here. The use of helicopters to transport personnel to and from offshore drilling platforms is close enough in spirit to the use of boats to perform such tasks to show the necessary relationship. *See Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 218–19, 106 S.Ct. 2485, 2492, 91 L.Ed.2d 174 (1986) ("Although the decedents were killed while riding a helicopter and not a more traditional maritime conveyance, that helicopter was engaged in a function traditionally performed by waterborne vessels: the ferrying of passengers from an 'island,' albeit an artificial one, to the shore."). Because both the locality and connection elements are satisfied, DOHSA applies to this claim under the doctrinal test of maritime jurisdiction.

Accordingly, the Court holds that because DOHSA provides an independent basis for jurisdiction, it governs the claim alleged by Plaintiff. Plaintiff's Motion for

Partial Summary Judgment is therefore **DENIED.**

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Partial Summary Judgment is **DENIED.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**